Darlene HINES, individually and as Administratrix of the Estate of Mark Douglas Hines, deceased, Hanson Hines and Eleanor Hines, Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant.

and

LIBERTY MUTUAL INSURANCE COMPANY, a foreign corporation, Defendant and Third–Party Plaintiff,

v.

CARSON INSURANCE AGENCY, INC., a corporation, Third–Party Defendant.

Civ. A. No. 89–0103–C(K).

United States District Court, N.D. West Virginia.

July 18, 1990.

James C. Peterson, Hill & Peterson, Charleston, W.Va., for plaintiffs.

Charles M. Surber, Jr., Wm. H. Hutchens, III, Morgantown, W.Va., for Liberty Mut.

Benjamin L. Bailey, Charleston, W.Va., for Carson Ins.

## MEMORANDUM OPINION AND ORDER

KIDD, District Judge.

On June 18, 1990, defendant Liberty Mutual Insurance Company ("Liberty") filed its motion to dismiss and/or summary judgment. On June 28, 1990, plaintiffs filed their opposition thereto. On July 9, 1990, Liberty filed its reply.[1]

The facts underlying this action are not in dispute and are as follows:

1. On December 20, 1988, plaintiffs' decedent, Mark Douglas Hines, was struck and killed by a vehicle owned by C & C Cartage and operated by Kevin Lambert ("tort-feasor's vehicle").

2. At the time of the accident, the tort-feasor's vehicle was covered by a One Million Dollar ($1,000,000) liability policy through Travelers Insurance Company ("Travelers") under a general liability policy maintained by Great American Lines, Inc., pursuant to 49 U.S.C. § 10927.

3. Also at the time of the accident, Hanson Hines, the decedent's father and owner of the 1979 Kenworth tractor driven by the decedent at the time of the accident, had purchased in West Virginia a liability insurance policy written by Liberty which contained bodily injury limits of Three Hundred Fifty Thousand Dollars ($350,000) and uninsured motorist coverage limits of Fifty Thousand Dollars ($50,000).

4. On June 23, 1989, plaintiffs settled their claim with C & C Cartage, Kevin Lambert, Great American Lines, Inc., and Travelers for One Million Dollars ($1,000,000), with Darlene Hines receiving Six Hundred Sixty–Seven Thousand

---

1. Liberty's reply memorandum was miss-styled and filed in a companion case bearing Civil Action No. 89–0102–C(K). Accordingly, the Clerk is directed to strike said filing and refile the same in Civil Action No. 89–0103–C(K), *nunc pro tunc* as of July 9, 1990.

Dollars ($667,000) with the remaining Three Hundred Thirty–Three Thousand Dollars ($333,000) going to Hanson Hines and Eleanor Hines.

Plaintiffs filed this action seeking, in part, a declaration against Liberty that there exists implied underinsured and uninsured motor vehicle coverages of Seven Hundred Fifty Thousand Dollars ($750,000), respectively, and that the tort-feasor's vehicle was both an underinsured motor vehicle and an uninsured motor vehicle. Liberty argues that the plaintiffs can not make a claim under either the underinsured provision or the uninsured provision because the tort-feasor's vehicle had greater liability insurance coverage than Liberty's implied underinsured and uninsured coverages and was, therefore, neither an underinsured motor vehicle nor an uninsured motor vehicle.

■ In regard to the underinsured coverage, applying the law of West Virginia, the Court finds as a matter of law that the tort-feasor's vehicle was not an underinsured motor vehicle under Liberty's policy [2] or W.Va.Code § 33–6–31(b).[3] The Liberty policy language mirrors the statutory language in defining an underinsured motor vehicle. This definition requires the insurance on the tort-feasor's vehicle to be less than Hanson Hines' insurance. However, the undisputed facts are that the insurance covering the tort-feasor's vehicle was One Million Dollars ($1,000,000) which was greater than Hanson Hines' insurance, even assuming *arguendo* the Seven Hundred Fifty Thousand Dollar ($750,000) amount.

Plaintiffs argue, though, that the second proviso in underinsured vehicle definition applies because the One Million Dollar ($1,000,000) insurance settlement was split among the plaintiffs. This argument is baseless. The plain language of both the statute and the policy refer to "payments to others injured in the accident." Only the decedent Mark Hines was injured in the accident, not the plaintiffs herein. As such, the Court finds that the tort-feasor's vehicle was not, by definition, an underinsured vehicle. Therefore, contrary to the plaintiffs allegation that the Court "apparently chose to ignore the clear language in *West Virginia Code* § 33–6–31(b), which absolutely prohibits set-offs of liability coverage versus uninsured/underinsured motorist coverage both inter, as well as intrapolicy wise," the Court does not reach that issue due to the finding that there is no underinsured motor vehicle involved in this action.

■ As is the case with the underinsured coverage, likewise there is no uninsured coverage because the tort-feasor's vehicle was not an uninsured motor vehicle. It had One Million Dollars ($1,000,000) of liability coverage which was recovered by the plaintiffs. Both Liberty's policy [4] and the definitions contained in the W.Va.Code

---

**2.** "Underinsured Motor Vehicle" means a land motor vehicle or trailer for which the sum of all liability bonds or policies at the time of the accident provides at least the amounts required by the West Virginia Motor Vehicle Safety Responsibility Law but their limits are either:
a. less than the limits of this insurance, or
b. reduced by payments to others injured in the accident to limits less than the insured carried for this insurance.

**3.** "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for underinsured motorists' coverage, or (ii) has been reduced by payments to others injured in the accident to

limits less than limits the insured carried for underinsured motorists' coverage.

**4.** "Uninsured motor vehicle" means a land motor vehicle or trailer:
a. For which no liability bond or policy at the time of an accident provides at least the amounts required by the West Virginia Motor Vehicle Safety Responsibility Law, or
b. For which an insuring or bonding company legally denies coverage or its bond or policy is in whole or part uncollectible because the company is or becomes insolvent or has been placed in receivership, or
c. Which is a hit-and-run vehicle and neither the driver nor owner is identifiable. The vehicle must hit an insured, an insured's property, a covered auto or a vehicle an insured is occupying.

§§ 33–6–31(c) [5] and 33–6–31(j) [6] mandate a ruling by the Court that the tort-feasor's vehicle was not an uninsured motor vehicle.

Plaintiffs' reliance on an opinion rendered by Kanawha Circuit Judge Tod J. Kaufman is misplaced. Judge Kaufman decided only that if an underinsured or uninsured motor vehicle was involved, then the policy limits available would be Seven Hundred Fifty Thousand Dollars ($750,000). However, the Court does not reach this issue since neither an underinsured nor an uninsured motor vehicle was involved in this action.[7]

It is therefore ORDERED that final judgment be entered in this action since the Court had previously granted defendant State Farm Mutual Automobile Insurance Company's motion to dismiss and/or summary judgment and that this action be dismissed and removed from the docket of the Court.

In light of the parties status report filed on July 17, 1990, and the stipulation contained in the paragraph labelled "2," it is further ORDERED that Civil Action No. 89–0102–C(K) also be DISMISSED and that the Clerk enter final judgment therein and dismiss said action and remove the same from the docket of the Court.

5. [T]he term "uninsured motor vehicle" shall mean a motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by section two [§ 17D–4–2], article four, chapter seventeen–d, as amended from time to time, or (ii) there is such insurance, but the insurance company writing the same denies coverage thereunder, or (iii) there is no certificate of self-insurance issued in accordance with the provision of section two [§ 17D–6–2], article six, chapter seventeen–d of the code of West Virginia. A motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown: Provided, That recovery under the endorsement or provisions shall be subject to the conditions hereinafter set forth.

6. A motor vehicle shall be deemed to be uninsured within the meaning of this section, if there has been a valid bodily injury or property damage liability policy issued upon such vehicle, but which policy is uncollectible in whole or in part, by reason of the insurance company issuing such policy upon such vehicle being insolvent or having been placed in receivership.

7. The Court, though, is troubled by Judge Kaufman's legal ruling that insurance companies are required "by operation of law" to issue any amount of liability insurance coverage requested in an application for insurance, with corresponding amounts of underinsured and uninsured coverages. Such a proposition is clearly contrary to the basic precepts of insurance law, as well as basic contract law. Judge Kaufman cites no statute nor case law in his opinion which would require an insurance company to offer any amount of liability insurance coverage requested in an application. The Court doubts that any such authority exists.